**WALCO ENGINEERING & CONSTRUCTION COMPANY, a corporation, Plaintiff,**

**v.**

**EAST KENTUCKY RURAL ELECTRIC COOPERATIVE CORPORATION, a corporation, Defendant.**

**No. 1265.**

United States District Court
E. D. Kentucky,
Lexington.
May 7, 1959.

Harbison, Kessinger, Lisle & Bush, Rufus Lisle, Lexington, Ky., B. L. Kessinger, Jr., Lexington, Ky., Clarence A. Warren, Tulsa, Okl., for plaintiff.

Edwin R. Denney, Lexington, Ky., Philip P. Ardery, Louisville, Ky., for defendant.

HIRAM CHURCH FORD, Chief Judge.

### Findings of Fact

By this action plaintiff, Walco Engineering & Construction Company, Inc., a Nevada corporation, hereinafter sometimes referred to as "Walco," seeks to recover from the defendant, East Kentucky Rural Electric Cooperative Corporation, Inc., a Kentucky corporation, hereinafter sometimes referred to as "Co-op," $49,016.49 allegedly due plaintiff as final payment for the performance and completion of two electrical transmission line construction contracts.

The contracts were based on Plans and Specifications which provided for construction of a rural electric transmission system known as Rural Electrification Administration Project Kentucky 59GT Fayette which originally was to consist of approximately 163.6 miles of suspension type transmission line in several sections traversing 15 Central Kentucky counties. Under the Plans and Specifications the project was subdivided into Part A which consisted of eight sections of line totaling approximately 112.2 miles and Part B initially consisting of four sections of line totaling 51.4 miles.

Plans, Specifications and Drawings for the project, along with Notice and Instructions to Bidders, Contractor's Proposal form, and sample Construction Agreement appear in a bound volume prepared for the defendant Co-op by Stanley Engineering Company, an engineering concern which supervised construction. (Deft's Ex. 3.) The Contractor's Proposal form contains the following provision:

"13. The Bidder agrees to commence construction of the Project within thirty (30) calendar days after written notice by the Administrator of the approval of the Construction Contract and further agrees to prosecute diligently and to complete construction in strict accordance with the Plans, Specifications and Construction Drawings within one hundred twenty (120) calendar days for Part A and sixty (60) calendar days for Part B '(excluding Saturdays, Sundays and legal holidays)' after the expiration of such 30 day period. Provided, however, that the Bidder will not be required to dig holes, set poles or install anchors if there are more than six (6) inches of frost in the ground nor to perform any construction on such days when in the judgment of the Engi-

neer snow, rains, or wind, or the results of snow, rain, or frost make it impracticable to perform any operation and to the extent of the time lost due to the conditions described herein and approved in writing by the Engineer, the time of completion set out above will be extended. The Bidder will nevertheless work on other items of construction if weather conditions do not seriously hamper such other construction. In the event of award of Part A and Part B to one Bidder the times for construction for each part shall be concurrent."

The sample Construction Agreement contains the following provisions:

"Article I

"Section 2.—Description of Contract.

"The Notice and Instructions to Bidders, the Proposal, Description of Assembly Units, Materials and Construction Specifications, Construction Drawings and Plans are hereby by reference incorporated herein and together with the Construction Agreement constitute the Contract.

"Article II—Construction

"Section 1.—Time and Manner of Construction.

"(a) The time for completion hereinbefore in the Contractor's Proposal set forth shall be extended for the period of any reasonable delay which is due exclusively to causes beyond the control and without the fault of the Contractor, including acts of God, fires, floods, and acts or omissions of the Owner with respect to matters for which the Owner is solely responsible: Provided, however, that no such extension of time for completion shall be granted the Contractor unless within ten (10) days after the happening of any event relied upon by the Contractor for such an extension of time the Contractor shall have made a request therefor in writing to the Owner, and provided further that no delay in such time of completion or in the progress of the work which results from any of the above causes or from any changes in construction which may be made pursuant to subsection (c) of this Section shall result in any liability on the part of the Owner.

\*     \*     \*     \*     \*     \*

"Article V—Remedies

\*     \*     \*     \*     \*     \*

"Section 2.—Liquidated Damages.

"The time of the Completion of the construction of the Project is of the essence of this Contract. Should the Contractor neglect, refuse or fail to complete the construction within the time herein agreed upon, after giving effect to extensions of time, if any, herein provided, then, in that event and in view of the difficulty of estimating with exactness damages caused by such delay, the Owner shall have the right to deduct from and retain out of such moneys which may be then due, or which may become due and payable to the Contractor the sum of One Hundred Dollars ($100.00) per day for each and every day that such construction is delayed in its Completion beyond the specified time, as liquidated damages and not as a penalty; if the amount due and to become due from the Owner to the Contractor is insufficient to pay in full any such liquidated damages, the Contractor shall pay to the Owner the amount necessary to effect such payment in full; Provided, however, that the Owner shall promptly notify the Contractor in writing of the manner in which the amount retained, deducted or claimed as liquidated damages was computed."

Although the executed contracts are not filed in evidence, it is made clear by the pleadings and testimony that on March 8, 1955, the parties entered into

the two contracts on which this suit is based, and that such contracts contained the provisions above quoted. By one contract East Kentucky engaged plaintiff to construct Part A and by the other Part B of the transmission system project. These contracts are referred to in the testimony as Contract 3A and Contract 3B respectively.

On February 12, 1957, Stanley Engineering Company executed certificates of completion stating that Contract 3A had been completed as of November 9, 1956, and Contract 3B as of December 17, 1956. These certificates of completion incorporate by reference Final Inventories which contain a computation of the over-all net amount due the contractor for the performance of each contract, and further provide as follows:

"F. Net Amount Due Contractor. (In making final payment to Contractor, the net amount due the Contractor, as shown by this Certification, will be reduced by the sums, if any, due the Owner for liquidated damages, payment made to date, or other sums which the Owner has the right to retain under the terms of the Contract, and signature by all parties does not preclude the retention by the Owner of such amounts.)"

It is undisputed that after crediting payments made to date the net amount due the contractor on each contract has been paid, except a balance of $28,148.31 on Contract 3A and $20,868.18 on Contract 3B, which sums have been retained by the defendant on its claim for liquidated damages.

By its Counterclaim as amended defendant, East Kentucky Rural Electric Cooperative Corporation, seeks liquidated damages computed on the basis of $100 per day for each and every day construction was delayed in completion beyond the time specified in the contracts. Defendant seeks $24,600 for alleged delay of 246 days in completing Contract 3A and $28,400 for alleged delay of 284 days in completing Contract 3B. The total amount of liquidated damages sought by defendant is $53,000.

A pre-construction conference was held at Winchester, Kentucky, March 29, 1955. Present at the conference were representatives of the contractor, the Co-op and Stanley Engineering Company. At this conference the contractor was urged to commence work at once. (Tr. 231.) By letter dated the following day, March 30, 1955 (Plf's Ex. 1), H. L. Spurlock, manager of the defendant Co-op, notified the plaintiff contractor that the executed contracts for the construction of the two transmission line sections 3A and 3B had been forwarded to the Rural Electrification Administration in Washington for approval, and authorized plaintiff to start construction at once while approval of the contracts was pending.

Plaintiff moved its men and equipment onto the job about April 4, 1955. (Tr. 20, 210, 232). There was sufficient materials on hand to begin the work (Tr. 236, 237, 238). Pole setting was somewhat delayed because due to a railroad strike an additional shipment of poles was not received until the middle of June, 1955. (Tr. 216.) However, there were approximately 50 miles of right-of-way to be cleared in section 3A and some 25 miles to be cleared in Section 3B. (Tr. 214, 215, 241, 242.)

Although already at work, the plaintiff was not obligated to commence construction until 30 days after notice of approval of the contracts by the Administrator of the Rural Electrification Administration. (Contractor's Proposal paragraph 13 above quoted.) The contracts were approved by the Administrator of REA April 11, 1955, making the official commencement dates of both contracts May 12, 1955. (Tr. 9, 24, 31, 263.) On the latter date, the Supervising engineer began preparing weekly reports of progress of construction on each contract. (Deft's Exs. 1, 5, 9, 10; Tr. 34, 82.)

### Contract 3A

According to the engineer's summary of weekly progress reports (Deft's Ex.

1), the engineer granted the plaintiff a total of 77 days extensions on Contract 3A for delays due to weather. (Tr. 44.)

The weekly progress reports for the weeks ending May 27th and June 17th, 1955, bear an inspector's notation to the effect that plaintiff was granted a 10-day extension on each of those dates for delay occasioned by non-receipt of poles due to the railroad strike, and plaintiff claims it is entitled to a 20-day extension as shown by these notations. (Deft's Ex. 5.) However, under the terms of the contracts, the inspector as a representative of the engineer lacked authority to grant an extension for delay occasioned by causes other than weather. (Tr. 72, Contractor's Proposal, par. 13 above quoted.) Therefore, the total time extension to which the plaintiff is entitled on Contract 3A for delay caused by slowness in receipt of pole shipments appears to be 13 days as granted by Mr. Spurlock, manager of the Co-op, by his letter dated June 27, 1956. (Tr. 34, 156; Deft's Exs. 1, 11.)

Allowing for this 13-day extension granted by the Co-op, in addition to the 77 days for delays due to weather granted by the engineer, under the original 120-day contract period, excluding Saturdays, Sundays and holidays, the completion date for Contract 3A was March 8, 1956. (See "Computation of Completion Date," Deft's Ex. 1.) Consequently defendant seeks liquidated damages computed on the basis of $100 per day for each and every one of the 246 calendar days from March 8, 1956, through and including November 9, 1956, the date Contract 3A was finally completed as shown by the certificate of completion. (Deft's Ex. 13; See computation in Defendant's brief filed Dec. 3, 1958, p. 5.)

However, during this 246-day period, the weekly reports of progress of construction show the contractor stopped work on contract 3A on April 27, 1956, and worked for a time entirely on Contract 3B, resuming work on Contract 3A on June 25, 1956, after a 59-day stoppage on that contract. The contractor claims it is entitled to be relieved of liquidated damages during this 59-day period because it moved off Section A at the request of the Co-op. (Tr. 22, 265.) The engineer testified the contractor was permitted to suspend work on Section 3A at its own request because of heavy crop damage resulting from work then in progress on that section. (Tr. 78.) Mr. Spurlock testified that because under the terms of the contracts the plaintiff was required to pay for such crop damage, he, as manager of the Co-op, agreed to permit plaintiff to suspend work on Section 3A. (Tr. 164, 165.) This agreement by Mr. Spurlock seems to justify plaintiff's claim for relief from liquidated damages during this 59-day period.

By allowing plaintiff exemption from liquidated damages for the 59-day period during which, with permission of the Co-op, it suspended work on Contract 3A, and subtracting that number of days from the 246-day period for which liquidated damages is sought by the Co-op, there remain 187 days for which, under the terms of the contract, plaintiff is obligated to defendant for liquidated damages amounting to $18,700.

### Contract 3B

Contract 3B originally covering 51.4 miles of the transmission system was to be completed within a 60-day construction period from the official commencement date, May 12, 1955, excluding Saturdays, Sundays and holidays.

Except for the usual delays due to weather and some delay resulting from slow delivery of poles occasioned by a railroad strike, plaintiff prosecuted the work on contract 3B until July 29, 1955 (Tr. 85, 156; Deft's Exs. 9, 10 and 11). On the latter date, by mutual agreement of the parties (Tr. 89, 92, 95, 164), plaintiff suspended work on Contract 3B and began working entirely on Contract 3A.

At the outset of this suspension of work on contract 3B, in view of the contract provision requiring simultaneous prosecution of work on both contracts, the Co-op concurred in a time extension

on contract 3B, thereby making the revised completion date for contract 3B December 13, 1955, which was also the revised completion date of contract 3A. (Tr. 87, 88, 92, 95, 100, 110, 164.)

Under the terms of Article 13 of the original contract, as hereinabove set out, adequate provision is made for additional time for completion of the contract to the extent that weather conditions rendered it impracticable to perform construction work.

It appears from the record that after December 13, 1955, because of weather conditions which prevailed at that time of year, the time for the completion of contract 3A was extended to March 8, 1956. We are of the opinion that the time for the simultaneous completion of contract 3B should have been likewise extended to March 8, 1956 (Tr. 95–97; Deft's Ex. 1).

By two amendments to contract 3B covering construction of an additional 41.86 miles of transmission line the period for completion of 3B was further extended for 60 "working days". (Pltf's Exs. 2, 3.)

Considering "working days" shown by the weekly reports of progress of construction made by the engineer subsequent to March 8, 1956, the plaintiff is entitled to a further extension of the completion date of contract 3B to July 27, 1956, for the reason that between March 8, 1956 and July 27, 1956, the engineer's weekly reports of progress show there were only 60 "working days" (Deft's Exs. 5, 10).

For the 143 days remaining from July 27, 1956, to and including December 17, 1956, the date of completion of 3B as certified by the engineer, under the terms of the contract, the plaintiff is obligated to defendant for liquidated damages in the sum of $14,300.

Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter of this action. Title 28 U.S.C.A. § 1332.

2. The engineer's certificates of completion filed herein containing the provision,

"In making final payment to Contractor, the net amount due the Contractor, as shown by this Certification, will be reduced by the sums, if any, due the Owner for liquidated damages, payment made to date, or other sums which the Owner has the right to retain under the terms of the Contract, and signature by all parties does not preclude the retention by the Owner of such amounts"

which were duly accepted by the parties do not preclude the defendant from recovering on its counterclaim, nor is the defendant's right to recover on its counterclaim precluded by failure to comply with Article V, Section 2 of the contracts. See letter H. L. Spurlock, to plaintiff, August 1, 1957, Deft's Ex. 18. The numerous reports issued week after week by the engineer and received and accepted by the plaintiff also gave notice of plaintiff's liability for liquidated damages under the provisions of the contract.

The defendant is entitled to the amount of $18,700 for 187 days' delay on the part of plaintiff in completing contract 3A and for the amount of $14,-300 for 143 days' delay on the part of plaintiff in completing contract 3B as amended, aggregating $33,000 which amount, when deducted from the total of $49,016.49 which defendant has retained, leaves a balance due the plaintiff in the amount of $16,016.49.

Let judgment be entered accordingly.